885 So.2d 1144 (2003)
Julia POLAND
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Crystal Lambert
No. 2003 CA 1417.
Court of Appeal of Louisiana, First Circuit.
June 25, 2003.
*1145 Randolph C. Slone, Slidell, Counsel for Plaintiff/Appellant Julia Poland.
William C. Lozes, Covington, Counsel for Defendants/Appellees State Farm Insurance and Crystal Lambert.
Before: WHIPPLE, KUHN, and McDONALD, JJ.
McDONALD, J.
Following a bench trial, the district court rendered judgment finding defendant 100% at fault in causing an automobile accident, but dismissed plaintiff's claims with prejudice, finding that the auto accident did not cause injuries for which plaintiff was seeking compensation. Plaintiff appealed the finding of lack of causation, and defendant answered the appeal, asserting that the trial court erred in finding that she was 100% at fault. For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL BACKGROUND
On November 11, 2000, State Farm's insured, Crystal Lambert (Lambert), entered Louisiana Highway 433 from the parking lot of a Wendy's restaurant and began traveling in an easterly direction. She maneuvered her vehicle across the two eastbound lanes of travel and into the left turn lane, where she intended to turn into the westbound lane of Highway 433 to head toward the interstate. At the same time, Julia Poland (Poland) was traveling eastbound on Highway 433 and struck the *1146 vehicle driven by Lambert. Both vehicles sustained damage in the collision, and both drivers denied injury at the time. Police investigating the accident issued a traffic citation for failure to yield from a private drive to Lambert, which she subsequently paid.
In late March 2001, Poland sought medical treatment with Dr. Carlos Nine for severe right shoulder pain. Dr. Nine reported a tentative diagnosis of cervical radiculopathy and rotator cuff tear in right shoulder, and ordered x-rays of the cervical spine and right shoulder. He prescribed Vioxx for the shoulder pain and referred Poland to the Tulane Orthopedic Clinic for the neck pain. Dr. James Butler evaluated Poland at the Tulane Orthopedic Clinic in May 2001. The initial examination revealed objective symptoms of limited range of motion and spasm, as well as subjective complaints of pain in the neck and right shoulder. Dr. Butler's diagnosis was preexisting cervical degenerative disc disease for which he recommended physical therapy. Poland had physical therapy from late May until late July 2001, at which time her range of motion had increased and her complaints of pain had decreased. She was still complaining of some pain in the neck, and reported that the exercises in physical therapy increased the pain. Dr. Butler recommended discontinuing physical therapy, following a home exercise program, and epidural injections for the pain. Poland declined to have the injections at that time.
In June 2002, Poland began experiencing pain in her hip and again consulted Dr. Nine. At the consultation, Dr. Nine asked how her neck was and Poland advised that it was still hurting. Nine treated the hip pain and referred Poland to Dr. Jeffrey Oppenheimer to get a second opinion as to the problem with her neck. Dr. Oppenheimer evaluated Poland in August 2002 and recommended cervical epidural steroid injections to treat her neck pain, for which he referred her to Dr. Christopher Lew. Dr. Lew administered the injections at the Surgery Suite in September and October 2002.
The injections eliminated the pain temporarily. When the pain returned, Poland went back to Dr. Oppenheimer. Dr. Oppenheimer advised Poland that she could undergo a cervical discogram to determine if she was a candidate for surgery. However, Poland was very opposed to surgery and advised that she would rather just live with the condition. She had been taking Aleve and otherwise managing to deal with the intermittent discomfort/pain since the accident and did not want to have surgery.
At trial Poland testified that her general health was good and prior to the accident in November 2000 she had not had any problems with her neck. She had consulted a chiropractor approximately 20 years before for low back pain, but had no problems with her back after that. In 1992 she experienced spontaneous onset of severe back pain for which she sought treatment at the Slidell Memorial Hospital emergency room. The back pain was subsequently determined to be caused by shingles, a viral infection. Poland said that she was not in pain on the day of the trial and that she had "good days and bad days." She takes Aleve for the pain if she cannot eliminate it by other means. Other than being bothered if she drives for extended periods, or has a heavy load to carry, she did not note any limitation on her activities.
The depositions of Drs. Butler and Oppenheimer were introduced at trial, as well as all of Poland's medical records, including those of Dr. Nine. Dr. Nine did not testify at trial. Poland called three witnesses that testified to corroborate her claims of neck pain beginning very soon after the accident, and the lack of prior *1147 complaints of neck pain. At the conclusion of the trial, the court took the matter under advisement and allowed the parties to submit post trial briefs if they chose to. On February 3, 2003, the court issued Reasons for Judgment finding that the sole cause of the accident was the negligence of Crystal Lambert, but that Ms. Poland's neck problems were not caused by the accident. Subsequently, judgment was signed dismissing Poland's claims with prejudice and assigning all costs to her.
Poland timely filed a devolutive appeal, asserting that the trial court's determination that her neck injuries were not caused by the accident was manifestly erroneous and contrary to the overwhelming weight of both medical and lay evidence. State Farm/Lambert filed an answer to the appeal, concurring with the trial court's judgment dismissing Poland's claims, but asserting that the trial court's finding that the sole cause of the accident was the negligence of Crystal Lambert was manifestly erroneous. Appellees contend that the testimony and evidence presented at trial clearly prove comparative negligence on the part of the plaintiff in causing the accident.

LAW AND ANALYSIS
In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident, which caused the injury. Plaintiff must prove causation by a preponderance of the evidence. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Yohn v. Brandon, XXXX-XXXX, p. 7 (La.App. 1 Cir. 9/27/2002), 835 So.2d 580, 584, writ denied, 2002-2592 (La.12/13/02), 831 So.2d 989, and cases cited therein. Whether an accident caused a person's injuries is a question of fact which should not be reversed on appeal absent manifest error. Mart v. Hill, 505 So.2d 1120, 1127-1128 (La.1987). A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one in light of the record reviewed in its entirety. See Stobart v. State Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
In this case, the trial court's reasons for judgment state, "the neck problems Ms. Poland has were not caused by the accident. The first treatment sought was 137 days after the accident and the symptoms were describes [sic] as `right shoulder pain since yesterday.' This lengthy period cannot be characterized as a condition appearing shortly after the accident. The testimony of Dr. Jeffrey Oppenheimer from page 29 through 36 of his deposition clearly indicates a lack of causation."
Although deference to the fact finder should be accorded, the appellate courts nonetheless have a constitutional duty to review facts. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 573. Initially we note that the air bag in Poland's vehicle deployed in the collision, striking her in the face. Angela Matthews, Poland's next-door neighbor and friend, testified that she saw Poland standing in front of her trailer the day after the accident. According to Ms. Matthews, she could see that something was wrong with Poland's face and went to ask her what happened. Poland advised Ms. Matthews of the car accident and said the brush burns on her face were from the air bag. Matthews also said that Poland seemed disoriented and wasn't herself. Poland also testified to the air bag's deployment and injury to her face. The *1148 trial court was clearly wrong in not awarding damages for this injury, albeit minimal.
The trial court noted that Poland didn't seek treatment until 137 days after the accident. However, Angela Matthews, as well as two other witnesses, testified that Poland had problems with her neck beginning within days of the accident. Ms. Matthews saw her on a regular basis after the wreck. Poland complained of neck pain, and on a Christmas shopping trip with Matthews Poland had to take medication to relieve the pain. Walter Hustmyre also testified. Mr. Hustmyre was Poland's employer and saw her on a daily basis. Poland has been his office manager for over twenty years. He testified that Poland told him about the accident the next work day, at which time she was complaining of being stiff and of neck pain. He also observed her taking actions, for example, getting up to walk around to "get the kinks out," consistent with having neck pain and/or discomfort. He testified that she did not miss work, except to go to doctor or physical therapy appointments.
Anthony Tulion had known Poland for about five years. He was a deacon in the church they both attended and also saw Poland socially. Mr. Tulion testified that Poland told him about the accident the following week. Her complaint at that time was problems with her neck. He also testified that on occasions when they would be out, Poland would start feeling bad because of pain in her neck and have to go home early. All three of these witnesses also testified that in the time that they had known Poland prior to the accident, she had never complained of problems with her neck.
When Poland sought medical treatment from Dr. Nine in March 2001, her main complaint was severe shoulder pain. Poland testified that she developed a "severe, severe" pain in her right shoulder. She "doctored" it for a couple of days, but it didn't subside. She went to work, but the pain was so bad, she couldn't stand it any more and went to Instant Care, where Dr. Nine examined her. Poland advised Dr. Nine that her shoulder was killing her and her neck was bothering her. X-rays were taken of the right shoulder and the right cervical spine. As noted previously, Dr. Nine prescribed medication for the shoulder and referred Poland to Dr. Butler for an evaluation of her neck.
The trial court found that Poland's neck problems were not caused by the accident because she first sought treatment 137 days after the accident for "right shoulder pain since yesterday." However, while the severe shoulder pain was what prompted her to seek medical attention, she also advised the doctor of the problems she had been having with her neck. Appellees argue that Poland sought medical treatment for shoulder pain, but did not advise the doctor of a problem with her neck and did not relate her condition to the November 2000 accident. Poland testified that she told Dr. Nine about the automobile accident. While we have no corroborating evidence of that fact, the medical records of Dr. Nine show that Poland did complain of neck pain and the x-rays ordered of the cervical spine substantiate that.
Poland argues that while a plaintiff does have the burden of proving by a preponderance of the evidence that his/her injuries were caused by a defendant's negligence, when a plaintiff is in good health prior to an accident, but commencing with the accident symptoms of disabling conditions appear and continuously manifest themselves, with the medical evidence showing a reasonable possibility of a causal connection between the accident and the disabling condition, a plaintiff is entitled to a presumption of causation as articulated in Housley v. Cerise, 579 So.2d 973 (La.1991). This is a correct statement of Louisiana *1149 law. However, appellees argue that Poland did not seek medical treatment until 137 days after the accident, and that she had pre-existing degenerative disc disease. Therefore, she has failed to meet the requirements of the presumption because she was not in good health prior to the accident and did not provide evidence of a sufficient temporal relationship between the accident and her alleged injuries.
Appellees rely on Juneau v. Strawmyer, 94-0903 (La.App.4 Cir. 12/15/94), 647 So.2d 1294 in asserting that a preexisting condition disqualifies a plaintiff from entitlement to a Housley presumption. In Juneau, the plaintiff had a preexisting condition that was arguably aggravated by an accident and the trial court reasoned that under these circumstances the plaintiff was not in "good health" and therefore, not entitled to a Housley presumption. The Fourth Circuit upheld the trial court's ruling denying a jury instruction giving plaintiff the Housley presumption, but not because a preexisting condition precludes a person from being in "good health." After an extensive consideration of plaintiff problems in proving causation in law (Louisiana as well as other states), and detailed analysis of the "component parts" of Housley, the appellate court upheld the trial court's ruling because in that case the medical evidence clearly showed that the plaintiff's "pre-accident and post-accident conditions were identical in all meaningful respects." Juneau 647 So.2d at 1294. The court further noted, "even if this case were viewed as one of aggravation of a pre-existing injury so that `health' in the strict sense of the word is not required" the plaintiff failed to satisfy the third prong of Housley. Juneau, 647 So.2d at 1300 (emphasis added).[1]
The third prong of Housley is that the plaintiff must demonstrate through evidence  medical, circumstantial, or common knowledge  a reasonable possibility of causation between the accident and the claimed injury, Juneau, 647 So.2d at 1299, citing Housley, 579 So.2d at 980 and Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740, 745 (La.App. 1 Cir.1988), writ denied, 540 So.2d 342 (La.1989). The trial court found that the deposition testimony of Dr. Jeffrey Oppenheimer, pages 29 through 36, "clearly indicates a lack of causation." In the pages referenced, defense counsel was questioning Dr. Oppenheimer. Dr. Oppenheimer was asked whether Poland's actions were consistent with someone who had not sustained an injury assuming: (1) no complaint of injury at the scene; (2) no medical treatment for 137 days; (3) the first medical treatment does not reference a motor vehicle accident; (4) she bowls three games a week four days after the accident and every month thereafter for a period of almost six months and that her bowling scores improved. Dr. Oppenheimer responded, "Yes, based on what you just described. I would agree with that."
Dr. Oppenheimer also testified that he had patients who had been in automobile accidents and not developed pain until after leaving the scene of the accident, and in fact, he had been in an accident and felt great for two or three days and then his neck started killing him. He said that there are patients who are very stoic and are reluctant to seek medical treatment  "you can amputate the[ir] leg and it's *1150 bleeding. You would have to pry them to the hospital." He testified that patients with complaints similar to Poland's continue to carry on their normal activities; that he considered bowling a light activity, and that it would not be unusual for a person who belonged to a league and felt a responsibility to bowl, to bowl in spite of some pain.
Dr. Oppenheimer testified that Dr. Nine referred Poland to him for neck pain, but he did not have her prior medical records and did not discuss her with Dr. Nine. In taking a history from Poland, she related that she had been in an automobile accident in November 2000 and developed some burning in her neck after that, relieved by extension of her neck. Based on Poland's history and examination, Dr. Oppenheimer diagnosed her as having neck pain secondary to cervical spondylosis. He testified that pain would be compatible with the diagnosis; that someone can be asymptomatic with degenerative disc disease; that trauma can activate or accelerate the condition; that preexisting degenerative disc disease would make Ms. Poland more susceptible to injury; and that it was more probable than not that the automobile accident aggravated the preexisting degenerative disc disease. Dr. Oppenheimer believed that "the accident caused her to be symptomatic."
We have already shown that the fact that Poland had a preexisting degenerative disc disease does not prevent her from establishing the pre-accident "good health" requirement to a Housley presumption. Contrary to appellees' assertions, there is no medical evidence that Poland's degenerative disc disease was symptomatic prior to the accident. The severe back pain, for which Poland sought treatment in 1992, was caused by shingles and was not related to degenerative disc disease. Poland, unlike the plaintiff in Juneau, had not even been diagnosed with disc disease prior to the November 2000 accident.
Poland testified that she was in good health prior to the accident and had not had any problems with her neck. Three witnesses corroborated this testimony. While these witnesses were friends, that is no reason to assume their testimony was not truthful. As a general rule the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party; however, this rule applies only in the absence of circumstances in the record casting suspicion on the reliability of this testimony. Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987). We find nothing in this record that casts suspicion on the reliability of any of these witnesses, or on Poland. Also, there is no indication by the trial court that he did not find the testimony of these witnesses to be credible. We find that Poland proved by a preponderance of the evidence that she was in "good health" prior to the accident, and specifically that she had no problems with her neck.
The second element to be proven by a plaintiff to benefit from the Housley presumption of causation is that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested afterwards. The testimony of Poland and the three witnesses, Angela Matthews, Walter Hustmyre, and Anthony Tulion, establish that Poland's neck problems appeared within days of the accident. While Poland testified that she had "good days," we do not find that to be inconsistent with continuous manifestation of the injury. There is no evidence that the symptoms ever completely resolved and she remained susceptible to pain, even in the course of normal daily activity. Poland's failure to seek medical treatment for several months does not preclude the possibility *1151 that she was, in fact, injured, and in pain. When questioned at trial as to why she had not sought medical treatment prior to March 2000, she replied, "Because I just felt like what little problems I had would go away. And I knew I had been in an accident and I felt that it would leave me." When asked did it (go away/leave), she answered, "no." We find that Poland proved by a preponderance of the evidence that symptoms of her injury appeared and continuously manifested themselves afterward.
Poland must also demonstrate through evidence  medical, circumstantial, or common knowledge  a reasonable possibility of causation between the accident and the claimed injury. The deposition testimony of both Dr. Oppenheimer and Dr. Butler establish a reasonable possibility of causation between the accident and Poland's neck injury. We find, therefore, that Poland has proven all three elements and is entitled to the Housley presumption that the November 2000 accident caused her degenerative disc disease to become symptomatic. If a plaintiff is entitled to the presumption of causation and the district court failed to apply the presumption, legal error results. Johnson v. State Dept. of Public Safety and Corrections, 95-0003 (La.App. 1 Cir. 10/6/95), 671 So.2d 454, 457, writ denied, 95-2666 (La.1/5/96), 667 So.2d 522. Because the trial court's legal error interdicted its finding on causation, the manifest error standard no longer applies, and we must determine de novo whether the plaintiff proved causation based on a review of the entire record. Rosell v. ESCO, 549 So.2d 840, 844 n. 2. (La.1989); Arceneaux v. Howard, 633 So.2d 207, 211 (La.App. 1 Cir.1993) writ denied 93-3128 (La.2/11/94), 634 So.2d 833. Further, if the plaintiff can show that she is entitled to the presumption of causation, the burden of proof then shifts to the defendant to prove some other particular incident could have caused the injury. Johnson v. State Dept. of Public Safety and Corrections, 671 So.2d at 457.
Defendants/Appellees maintain that they "presented several alternate explanations for the plaintiff's alleged injuries." They point out that Poland bowled every week from the date of the accident until March 21, 2003, eight days prior to the date she first sought medical treatment. At trial, defense counsel asked Mr. Hustmyre if he knew what happened to Poland in mid-March 2001 that caused her to miss her weekly bowling game. Mr. Hustmyre answered that the only thing he knew that stopped Poland bowling was her back and neck. Mr. Hustmyre was interrupted and asked hadn't Poland bowled after that. When he replied in the affirmative, defense counsel queried, "assume she missed her weekly bowling match on March 21, 2001, do you know why she could not bowl that day?" Hustmyre replied, "No."
Defense counsel similarly questioned Mr. Tulion:
Q. What happened in mid-March 2001 that restricted Ms. Poland from bowling? Do you know?
A. No.
Q. Do you know that when she went to the doctor, specifically on March 29th that she said she only had these shoulder problems from the day before?
A. I don't remember her telling me that.
Q. Did she ever tell you how or why her shoulder problems started on March 28, 2001?
A. I don't think so.
Appellees contend that something happened to Poland in mid-March 2001 that caused her shoulder pain. However, their burden here is to prove that some particular incident, other than the November 2000 automobile accident, could have caused the injury that Poland attributes to the accident. We find that defendants have not *1152 met this burden and that the accident caused Poland's degenerative disc disease to be symptomatic. Therefore, we reverse the trial court's ruling that the November 2000 accident did not cause Poland's neck problems and will award damages based on the record before us.
Poland's medical bills for each medical provider were entered into evidence and stipulated to be eleven thousand, five hundred dollars and forty-nine cents ($11,500.49). The total due to Dr. Carlos J. Nine/Instant Care Family Medical was three hundred sixty-seven dollars ($367.00). However, Poland testified that the severe shoulder pain for which she was treated by Dr. Nine on 3/29/01 and 4/12/01 was probably not related to the accident. Also, the hip pain for which she was treated in June 2002 was found to be sciatica, and not related to the accident. While Poland's petition seeks to recover special damages for past, present, and future earning impairment and/or lost wages, no evidence was presented at trial on these damages. Therefore, we award special damages in the amount of eleven thousand one hundred thirty-three dollars and forty-nine cents ($11,133.49).
As we noted initially, Poland's face was injured by the deployment of the air bag in the collision. Also, the degenerative disc disease in her cervical spine became symptomatic, causing her pain in her neck and some limitation on her activities. Poland's testimony was that she considered her post-accident condition to present only "little problems." Considering all of the facts and the medical testimony regarding Poland's degenerative disc disease, as well as the minimal damage to her face from the deployment of the air bag, we award general damages in the amount of twelve thousand five hundred dollars ($12,500.00).
State Farm/Lambert also answered the appeal, contending that the trial court committed manifest error in its determination that the subject accident resulted from the sole negligence of Lambert. At trial, defendants elicited testimony, and offered maps into evidence, showing that the route Poland claimed to have taken on the evening of the accident was not the shortest route to her destination. They also offered testimony that an alternate, much shorter route, was used frequently to avoid a traffic signal. Although Lambert was ticketed in the accident, Lambert's father testified that at the scene, Poland told him that she did not know who was at fault in the accident. There is also testimony concerning the necessity for calling an additional investigating officer to determine who was at fault and that the determination took a considerable time.
In post trial brief, defendants argued that the reason Lambert did not see Poland prior to entering Highway 433 was because Poland was not traveling on Old Spanish Trail (Hwy 433), but was cutting across the Texaco gas station parking lot in an attempt to avoid the light. Alternatively, it is argued that Poland was at fault for driving at an excessive speed and failing to take any action to avoid the accident when she had almost eight seconds in which to do so. The trier of fact is owed great deference in its allocation of fault. Even if the reviewing court would have decided the case differently had it been the original trier of fact, the trial court's judgment should be affirmed unless manifestly erroneous or clearly wrong. Clement v. Frey, 95-1119 c/w 95-1163 (La.1/16/96), 666 So.2d 607, 610. We find that there is a reasonable basis for the trial court's allocation of fault in the record and that its finding is not manifestly erroneous or clearly wrong.

CONCLUSION
For the foregoing reasons, we affirm the trial court's finding that the accident was *1153 caused by the sole negligence of Crystal Lambert, we reverse the trial court's finding that the symptoms of Poland's degenerative disc disease was not caused by the November 2000 accident with Lambert, and we award damages to Poland in the amount of twenty-three thousand six hundred thirty-three dollars and forty-nine cents ($23,633.49). Costs of this appeal and the trial court proceedings are assessed to State Farm/Lambert.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED, ANSWER TO APPEAL DENIED.
NOTES
[1] In order for a plaintiff to benefit from the Housley presumption of causation, he must establish three things by a preponderance of the evidence. First, he must prove that he was in good health prior to the accident at issue. Second, he must show that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterwards. Juneau 647 So.2d at 1299 (The third Housley element is cited above.)