# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-IA-01287-SCT

*ROBERT G. GERMANY*

*v.*

*GINGER GERMANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/12/2011 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MYLES A. PARKER |
| | JAMES L. CARROLL |
| | STACEY P. STRACENER |
| | CLIFTON M. DECKER |
| ATTORNEYS FOR APPELLEE: | SETH C. LITTLE |
| | BARRY W. GILMER |
| | THOMAS A. WALLER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 10/17/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This interlocutory appeal arises from the Madison County Circuit Court's denial of Robert Germany's motion to sever and transfer claims filed against him by his wife, Ginger Germany, to the Germanys' pending divorce proceeding in the Hinds County Chancery Court. Finding that many of Ginger's claims against Robert are either equitable in nature or are related to divorce and alimony, we reverse the circuit court and remand with instructions

to sever and transfer those claims to the pending divorce action in the Chancery Court of the First Judicial District of Hinds County, Mississippi.

## STATEMENT OF THE CASE

¶2.    Ginger filed a complaint against Robert and Holly Morgan for money damages, an accounting, and injunctive relief in the Circuit Court of Madison County, Mississippi, on February 24, 2011.  On February 28, 2011, Robert filed a complaint for divorce against Ginger in the Chancery Court of the First Judicial District of Hinds County, Mississippi.

¶3.    In her complaint against Robert, Ginger asserted claims for breach of contract; fraud, deceit and deception; constructive trust and unjust enrichment; conversion; accounting; intentional infliction of mental distress; negligent infliction of mental distress; and a request for injunctive relief.  She requested judgment in the form of a constructive trust in her favor as well as a money judgment against Robert for both actual and punitive damages.  Ginger also requested a judgment against Defendant Morgan for actual and punitive damages for her claims of alienation of affection, intentional infliction of mental distress, and negligent infliction of emotional distress.

¶4.    On April 7, 2011, Robert filed in the circuit court a motion to dismiss, an alternative motion to transfer, and an alternative motion to stay proceedings, arguing that Ginger's claims against him are matters of equity or are related to divorce and alimony and would be better addressed in chancery court.  A hearing on the motion was held on June 17, 2011, and on August 12, 2011, the circuit court judge filed his order denying Robert's motion.  On August 22, 2011, Robert filed a motion to reconsider and requested that the circuit court judge stay the proceedings until this Court renders its decision on the interlocutory appeal.

2

¶5. On September 2, 2011, Robert filed a petition for interlocutory appeal with this Court, raising the following issues:

> I. **Whether the Madison County Circuit Court erred in denying Robert's Motion to Sever and Transfer Ginger's claims to the pending divorce action in the Chancery Court for the First Judicial District of Hinds County.**
>
> II. **Whether the Madison County Circuit Court erred in denying Mr. Germany's Motion to Stay in light of the pending divorce action in the Chancery Court for the First Judicial District of Hinds County.**

¶6. The circuit court judge issued an order on November 2, 2011, to hold in abeyance Robert's motion to reconsider pending the disposition of the petition for interlocutory appeal. The court noted that there was "potential for conflicts in a situation where the Plaintiff and the Defendant Robert Germany may be involved in litigation in two different courts, involving similar evidentiary matters, at the same time."

¶7. Having granted Robert's petition for interlocutory appeal, we limit our discussion to the first issue, finding it to be dispositive.

## STANDARD OF REVIEW

¶8. Robert argues that Ginger's claims, "if viable at all, are within the exclusive subject matter jurisdiction of the Chancery Court, and should properly be determined with all other issues in the pending Divorce Action." Jurisdiction is a question of law which this Court reviews de novo. *Trustmark Nat'l Bank v. Johnson*, 865 So. 2d 1148, 1150 (Miss. 2004) (citations omitted). The standard of review for a ruling on a motion to transfer from chancery court to circuit court, or vice-versa, for lack of subject-matter jurisdiction is also de novo. *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1178 (Miss. 2004).

3

## DISCUSSION

**Whether the Madison County Circuit Court erred in denying Robert's Motion to Sever and Transfer Ginger's equitable claims to the pending divorce action in the Chancery Court for the First Judicial District of Hinds County.**

¶9.     Robert asserts that the circuit court erred in failing to sever and transfer Ginger's claims against him in the underlying circuit court action to the Germanys' pending divorce action in the Chancery Court of the First Judicial District of Hinds County, Mississippi. Robert argues that, although Ginger's claims were brought "under the guise of being 'legal' claims," they are substantively "matters in equity" or "divorce and alimony." In support of his argument, Robert relies on Article 6, Section 159 of the Mississippi Constitution, which states:

> The chancery court shall have full jurisdiction in the following matters and cases, viz.:
>
> > (a)     *All matters in equity*;
> > (b)     *Divorce and alimony*;
> > . . .
> > (f)     All cases of which the said court had jurisdiction under the laws in force when this Constitution is put in operation.

(Emphasis added.) Additionally, Article 6, Section 157, of the Mississippi Constitution requires that "[a]ll causes that may be brought in the circuit court whereof the chancery court has exclusive jurisdiction *shall* be transferred to the chancery court." (Emphasis added.) This Court has rejected the assertion that Article 6, Section 159 of the Mississippi Constitution conferred *exclusive jurisdiction* in all matters of equity when it conferred *full jurisdiction* over such matters. *W. Horace Williams Co. v. Fed. Credit Co.*, 21 So. 2d 582, 583 (Miss. 1945) (emphasis added). However, the Legislature has instructed that

4

"proceedings to obtain a divorce *shall* be by complaint in chancery . . . ." Miss. Code Ann. § 93-5-7 (Rev. 2004) (emphasis added).

¶10.    The real question before this Court is whether Ginger's complaint presents legal claims that should be decided by a jury in circuit court, or whether her claims are really matters of equity or related to her marriage and/or divorce that should be heard in chancery court.    This Court has held that, in determining whether a court has subject-matter jurisdiction, "one must look at the substance, and not the form, of the claim in order to determine whether the claim is legal or equitable" and "we look to the face of the complaint, examining the *nature of the controversy* and the relief sought."  ***Trustmark Nat'l Bank v. Johnson***, 885 So. 2d 1148, 1151 (Miss. 2004) (citations omitted); ***Derr Plantation, Inc. v. Swarek***, 14 So. 3d 71, 716 (Miss. 2009) (emphasis added) (citing ***RAS Family Partners, LP v. Onnam Biloxi, LLC***, 968 So. 2d 926, 928 (Miss. 2007)).   Thus, we must look to the substance of each of Ginger's claims, examining the nature of the controversy and the relief sought, to determine whether they are truly legal or equitable in nature.

### A.  Breach of Contract

¶11.    Ginger alleges that she and Robert formed an oral contract prior to their marriage and continuing to the present wherein she agreed to set over her money and assets to Robert for his use, management, and financial investment purposes.  Ginger also allowed Robert to use her money for the payment of income taxes.  Ginger claims that, in exchange, Robert promised that they would equally share $12,000,000 from his tobacco settlement (the settlement was earned by Robert in 1999 but he chose to defer receipt of the money until 2011).  Although not expressly stated, it appears that Ginger is seeking specific performance

5

of the contract – she claims that they agreed that she would receive repayment of her cash contributions as well as an equal part of the tobacco money. She also alleges that Robert's breach of contract was willful, capricious, and malicious and that the breach amounts to a separate tort and she should be entitled to actual and punitive damages together with attorneys' fees and other costs associated with the litigation.

¶12. Although labeled as a breach-of-contract claim, the "contract" that Ginger refers to is an agreement she and Robert made, when they lived together and continuing during their marriage, for the management of their money and assets. It was held long ago that "marriage itself, as a personal relation between the parties, is not a matter of contract within the meaning of the constitutional provision in reference to the inviolability of contracts." *Carson v. Carson*, 40 Miss. 349, 351 (Miss. 1856).

¶13. While Ginger's claim to the "tobacco money" is artfully pleaded, this allegation cannot be considered in isolation. The parties operated under the terms of this "contract" throughout their ten-year marriage, accumulating and commingling property, until their separation in 2010. For example, the funds Ginger allegedly entrusted to Robert's management were used to purchase marital property, such as the parties' homes in Jackson, Mississippi, and Scottsdale, Arizona. As discussed below, the chancellor has found that Ginger received proceeds from the sale of the Jackson home, contrary to the allegations in her complaint. The parties also accumulated a substantial wine collection, which Ginger argues should be sold, with the proceeds being handed over to her. Ginger also claims that her funds were used for the payment of the income tax debt resulting from Robert's tobacco litigation fee, and that a substantial part of Ginger's estate was committed *during the*

6

*marriage*.  Finally, as explained more fully below, Ginger has sought and been awarded separate maintenance in the chancery court proceeding, based in large part on Robert's substantial income from the tobacco litigation.  Looking at this case as a whole, it would be impossible for a circuit court to separate Ginger's breach-of-contract claim from her other claims that are substantively equitable in nature and concern the distribution of the couple's property.  The substance of Ginger's breach-of-contract claim is whether the parties commingled their assets during the marriage and whether she is entitled to receive a portion of Robert's tobacco litigation fee.  The chancery court could better address whether Ginger is entitled to any of this money when it determines how the parties' assets should be separated upon dissolution of the marriage, based on the factors set out in *Ferguson*. *See Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

¶14.   Ginger has been awarded separate maintenance in the divorce action.[1] Separate maintenance is an equitable remedy based upon the marriage relationship, and a decree for separate maintenance is a command to the husband to resume cohabitation with his wife or to provide suitable maintenance "until such time as they may be reconciled to each other." *Daigle v. Daigle*, 626 So. 2d 140, 145 (Miss. 1993) (citing *Lynch v. Lynch*, 616 So. 2d 294, 296 (Miss. 1993)).  The purpose of separate maintenance is "to provide, as nearly as may be possible, the same sort of normal support and maintenance for the wife, all things considered,

----

[1]It was revealed at oral argument before this Court that Ginger has sought and was awarded separate maintenance in the pending divorce proceeding. The chancellor issued a temporary order granting Ginger separate maintenance on March 20, 2013. Robert's petition for interlocutory appeal challenging the award of separate maintenance was denied. *See Robert G. Germany v. Ginger M. Germany*, No. 2013-M-01180-SCT (Aug. 28, 2013).

as she would have received in the home, if the parties had continued normal cohabitation. .

. ." ***Robinson v. Robinson***, 554 So. 2d 300, 305 (Miss. 1989). When making an award of

separate maintenance, the chancery court is to consider:

> (1) The health of both husband and wife;
> (2) Their combined earning capacity;
> (3) The reasonable needs of the wife and children;
> (4) The necessary living expenses of the husband;
> (5) The fact that the wife has free use of the home and furnishings; and
> (6) Other such facts and circumstances bearing on the subject that might be shown by the evidence.

***Daigle***, 626 So. 2d at 145.

¶15.   In a divorce proceeding, the chancery court will determine the division of marital

assets through equitable distribution and will consider:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>    a. Direct or indirect economic contribution to the acquisition of the property;
>    b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>    c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
> 2. *The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.*
> 3. *The market value and the emotional value of the assets subject to distribution.*
> 4. *The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse*;
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

8

6.    *The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties*;

7.    *The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity*; and,

8.    *Any other factor which in equity should be considered.*

*Ferguson*, 639 So. 2d at 928 (emphasis added).

¶16.    Ginger claims that she learned that Robert had breached their "contract" when he announced on November 29, 2010, that he was having an affair and wanted a divorce. It is significant to note that Ginger considers the date that Robert announced his intent to file for divorce as the date that the "contract" was breached. The tobacco money, to which Ginger alleges she is entitled an equitable share, may or may not be deemed marital property in the divorce action, but it would be considered during the equitable distribution of the couple's property and in determining the amount of separate maintenance or alimony, if any, to which she would be entitled. *See Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994) ("If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered.") Therefore, we find that the substance of the breach-of-contract claim is related to divorce and alimony and, thus, should be transferred to the chancery court proceeding.

**B.  Fraud, Deceit, and Deception**

¶17.    In her claim for fraud, Ginger reiterates that she set over a substantial amount of her inheritance, which otherwise would have been nonmarital property. *See Hemsley v. Hemsley*, 639 So. 2d 909,  914 (Miss. 1994) ("Assets acquired or accumulated during the

course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage."); *but see* **Johnson**, 650 So. at 1286 (nonmarital assets may lose such status if the asset is commingled with marital property or used for familial benefit). She claims that "all of this commingling of assets and furnishing of money to Defendant Germany was based on his false material misrepresentations that Plaintiff's money and other assets would be invested, safely kept and otherwise returned to Plaintiff upon the receipt and distribution of the 'tobacco money'. . . ."

¶18. Ginger seeks punitive damages "in a sum sufficient to deter such conduct [fraud, deceit, and deception] in the future." In support of her contention that her claim for fraud is legal and not equitable, she cites this Court's holding in *Southern Leisure Homes v. Hardin*, 742 So. 2d 1088 (Miss. 1999). In *Hardin*, the Hardins filed suit against Southern Leisure Homes, Inc., in the Chancery Court of Washington County. *Id.* at 1089. The Hardins alleged that Southern had breached a contract to sell a mobile home to the Hardins, that Southern had entered the contract with full knowledge that the property already had been contracted to be sold to another party, and that such actions were both negligent and fraudulent. *Id.* The Hardins sought to recover both actual and punitive damages and attorneys' fees. *Id.* This Court found that, although acts of fraud may give rise to actions in equity, the Hardins clearly were seeking a legal, rather than equitable remedy— $10,000 in actual damages and $100,000 in punitive damages. *Id.* at 1090.

¶19. The facts of the case *sub judice* are distinguishable from those in *Hardin*. In *Hardin*, we concluded that the plaintiff's claims amounted to "essentially a breach of contract claim

10

which is best heard in circuit court." *Id.* But *Hardin* involved a commercial "arm's length" transaction, rather than an agreement between spouses concerning how the couple's finances would be managed. The remedy Ginger seeks for Robert's alleged fraud – "the promised equal share of the 'tobacco money'"– further illustrates the equitable substance of her claim. The fact that she is seeking punitive damages should not be the determining factor of whether her claim is legal rather than equitable. *See Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 464 (Miss. 1983) (Claims for punitive damages are legal and not equitable, but chancery courts have actual subject-matter jurisdiction over punitive-damages claims). Ginger has alleged essentially the same set of facts for her fraud claim as she did in her breach-of-contract claim, which we find to be equitable in nature and related to the parties' pending divorce. Accordingly, we find that Ginger's fraud claim is related to divorce and alimony and should be transferred to the chancery court proceeding.

### C. Constructive Trust and Unjust Enrichment

¶20. Ginger's claim that Robert has been unjustly enriched and that the court should impose a constructive trust upon certain assets is based on the same set of facts that give rise to her other claims that she contends are "purely legal." However, Ginger's attorney conceded at the hearing on the motion to transfer that her claims for constructive trust and unjust enrichment are equitable claims. She, in fact, asserts that "*equity* should restore her to her former financial position together with an *equitable share* of the tobacco money. . . ." This Court has made it clear that the remedies of constructive trust and unjust enrichment are equitable. *See McNeil v. Hester*, 753 So. 2d 1057, 1064 (Miss. 2000) ("A constructive trust is a fiction of *equity* created for the purpose of preventing unjust enrichment . . . .")

11

(emphasis added); *Koval v. Koval*, 576 So. 2d 134, 136 (Miss. 1991) (Unjust enrichment is an *equitable remedy* based on contract law) (emphasis added).

¶21.    Ginger specifically requests an *equitable* portion of Robert's assets.  Ginger argues that she is not seeking a divorce or alimony, and the fact that her claims are based on the parties' marriage and Robert leaving such marriage should not convert her claims to those of "divorce and alimony."  However, Ginger has asserted that she is entitled to separate maintenance and alleges the same set of facts for consideration in the chancery court matter.  Equitable distribution, alimony, and separate maintenance would be considered in the divorce action.  Our holding in *Ferguson*, 639 So. 2d 921, established the guidelines that chancellors are to consider when dividing marital property.  And alimony is considered only after the marital property has been equitably divided and the chancellor determines that one spouse is at a deficit.  *Johnson,* 650 So. 2d at 1287.  Although Ginger has not requested alimony per se, her claims filed in the circuit court would have the same effect and serve the same purpose that equitable distribution or an award of alimony would serve in the divorce matter; therefore, to allow her to pursue a claim for unjust enrichment in circuit court based on the same facts alleged in the chancery court matter potentially would lead to double recovery.

### D.  Conversion

¶22.    Ginger claims that Robert converted her money to his use and that she has been injured in excess of $1,000,000 because of this conversion.  Ginger argues that this is a legal claim and relies on this Court's holding in *Crosby*, in which this Court found that "conversion, which requires an intent to exercise dominion or control over goods which is

12

inconsistent with the true owner's rights, is an intentional tort . . . . Tort claims are heard in circuit court." ***Crosby***, 870 So. 2d at 1182 (citations omitted).

¶23.    Ginger alleges in her complaint that the couple's Jackson, Mississippi, home sold for $2,225,000 and that Robert converted $1,163,515.53 from the sale of the home to his own use, dominion, and control by endorsing the check with his signature and forging Ginger's signature.  In a temporary hearing that occurred subsequent to the filing of Ginger's civil complaint, the chancellor addressed some of the allegations in Ginger's civil complaint related to the sale of the parties' Jackson home.[2]  The chancellor found, contrary to the allegations in Ginger's complaint, that the sale of the home netted approximately $750,000 after fees, expenses, mortgage payoff and the payment of back taxes and that *Ginger received* $126,000 from the proceeds of the home.  With the remaining money, Robert paid American Express $262,619, paid the Internal Revenue Service (IRS) $32,398, paid BankPlus $32,398, paid his lawyer $15,000 in an unrelated domestic matter, and paid twelve mortgage payments (including taxes and insurance) on the Arizona home totaling approximately $140,000.

¶24.    Part of Ginger's "conversion claim" includes a judicial sale of Robert's wine collection with an order setting over the proceeds of the sale to her.  Ownership and disposition of the wine collection, part of which was acquired during the marriage, necessarily should be determined by the chancery court as part of the divorce action.  Ginger

---

[2]*See **Robert G. Germany v. Ginger M. Germany***, No. G-2011-309, Judgment with Findings of Fact and Conclusions of Law (Hinds County Chancery Court, First Judicial District, Aug. 19, 2011).

13

has not asserted how the substance of her claim for conversion is a legal, rather than equitable, claim.

¶25. We find that Ginger's claim for conversion is really a request for the circuit court judge to award her marital assets that ordinarily would be distributed in the divorce action.

### E. Accounting

¶26. Ginger explains that Robert maintains dominion and control over most of the records and documents reflecting disposition of the money throughout their marriage. She requests access to the couple's financial records and asserts that "[j]ustice and *equity* cannot be done without access to such records and the formulation of a strict accounting reflecting the disposition of said money together with the full disclosure of Defendant Germany's transactions, income, debts, expenditures, assets and liabilities from 1993 to present."

¶27. The chancery court and circuit court have concurrent jurisdiction over "suits involving inquiry into matters of mutual accounts." Miss. Const. art. 6, § 161. However, if a plaintiff brings suit in circuit court, that court may "transfer the cause to the chancery court, if it appears that the accounts to be investigated are mutual and complicated." *Id.* We find that the facts of this case present such an instance where the circuit court's transfer to chancery court would be proper, as the accounts at issue are complicated. This conclusion is supported by evidence already considered in the divorce proceeding. Robert and Ginger already have filed financial disclosure statements ("8.05 forms") in the pending divorce proceeding in chancery court. *See* URCCC 8.05. The chancery court already has begun to analyze the parties' financial information, such as the sale of the Jackson home. The chancellor also has considered the financial situations of the parties for the purpose of determining separate

14

maintenance.[3] The chancery court therefore is in the best position to address Ginger's claim for accounting.

### F. Intentional and Negligent Infliction of Emotional Distress

¶28. Ginger has asserted claims of intentional and negligent infliction of mental distress against Robert. Ginger claims that Robert openly engaged in an extramarital affair with Holly and that he flaunted the affair by taking trips using Ginger Germany's American Express credit card. She claims that Robert intended to punish her for complaining of mounting debt by incurring additional debt with Defendant Morgan. Ginger also claims that she suffered emotional distress due to Robert's failure to warn that he was having an affair or that he desired to divorce her. She seeks both compensatory and punitive damages for the mental distress which she claims she has suffered as a result of his actions.

¶29. Robert argues that Ginger's claim against him for intentional and negligent infliction of mental distress are directly related to the chancery court's determination of "fault or misconduct" and are "matters in equity" or "divorce and alimony" and should be determined by the chancery court.

¶30. It appears that Ginger's claims for negligent and intentional infliction of mental distress are substantially an attempt to recover punitive damages against Robert through a claim akin to the tort of alienation of affection. "Where a husband [wife] is wrongfully deprived of his [her] rights to the 'services and companionship and consortium of his [her] wife [husband],' he [she] has a cause of action 'against one who has interfered with his [her]

---

[3] *See supra* n.1.

domestic relations.'" ***Camp v. Roberts***, 462 So. 2d 726, 727 (Miss. 1985) (quoting ***Walter v. Wilson***, 228 So. 2d 597, 598 (Miss. 1969), *overruled in part on other grounds by* ***Saunders v. Alford***, 607 So. 2d 1214 (Miss. 1992)). Ginger certainly is entitled to bring the claims of alienation of affection and negligent and intentional infliction of emotional distress against Robert's alleged paramour in circuit court; however, we have never recognized a cause of action against one's own spouse for failure to warn either of an affair with a paramour or of the desire to obtain a divorce. Nevertheless, this claim clearly seeks a purely legal remedy – monetary and punitive damages for the distress Ginger claims she suffered because of Robert's actions. Because the merits of this claim could not be addressed sufficiently in a divorce action, we find that Ginger's claim against Robert for intentional and negligent infliction of emotional distress should be retained by the circuit court.

### G. Alienation of Affection

¶31.    Ginger requests a judgment against Holly Morgan for the sum of $2,000,000 as actual and punitive damages for her claim of alienation of affection.[4] This claim is properly before the circuit court.

### H. Injunctive Relief

¶32.    Ginger asserts that she is entitled to injunctive relief in the form of temporary restraining orders and/or preliminary injunctions. Specifically, she requests that Robert employ all means necessary to satisfy IRS claims from his resources other than the wine

---

[4]Although not an issue in this case, Ginger's claim for alienation of affection against Holly Morgan may have to be severed from her claims for intentional and negligent infliction of emotional distress against Robert.

collection . . . or the sale of the marital home in Scottsdale, Arizona; that he be ordered to satisfy the requirements of Lydian Bank and Trust and BankPlus regarding full payment or service of the existing mortgages and homeowners' association fees, taxes and insurance; that he be ordered to pay all sums owed on the American Express account, which is in Ginger's name, and cease use of such; that he be enjoined from entering the Scottsdale home; and such other injunctive relief as the court deems proper.

¶33. A determination of who is responsible for the parties' accounts should be made in the divorce action in chancery court. Ginger's claim for injunctive relief is directly related to the winding down of the marital relationship. This Court has held that injunctive relief is an equitable remedy within the chancery court's jurisdiction. *Derr Plantation, Inc.*, 14 So. 3d at 718 (citing *Issaquena Warren Counties Land Co. v. Warren County*, 996 So. 2d 747, 751 (Miss. 2008)). Accordingly, we find that the substance and the form of Ginger's claim for injunctive relief is equitable and is directly related to the distribution of marital property. Therefore, the issue presented should be decided in the divorce action.

### CONCLUSION

¶34. Ginger's claims against Robert that are more closely related to the marital relationship and financial affairs of the parties should be decided in chancery court. On the other hand, Ginger's claims against Robert for intentional and negligent infliction of emotional distress, along with Ginger's claims against Holly Morgan, are purely legal and are properly before the circuit court. Therefore, we find that the trial court erred in denying the motion to sever and transfer Ginger's claims against Robert that are either equitable or relate to the pending divorce to chancery court. Accordingly, we reverse the judgment of the trial court and

17

remand with instructions to transfer the equitable claims to the ongoing chancery court action.

¶35.   **REVERSED AND REMANDED.**

   **RANDOLPH, P.J., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J.  KITCHENS, J., NOT PARTICIPATING.**

   **COLEMAN, JUSTICE, DISSENTING:**

¶36.   On February 24, 2011, Ginger Germany filed a complaint in the Circuit Court of Madison County, Mississippi, against her husband, Robert Germany, and her husband's alleged paramour.  She asserted the following counts for relief against her husband: (1) breach of contract; (2) fraud, deceit, and deception; (3) constructive trust and unjust enrichment; (4) conversion; (5) a request for an accounting; (6) intentional infliction of mental distress; (7) negligent infliction of emotional distress; and (8) a request for injunctive relief.  Because I disagree with the majority's universal relegation of Mrs. Germany's claims to chancery court – where she will be deprived of her constitutional right to a jury trial simply because her estranged husband filed a later complaint for divorce – I respectfully dissent.

¶37.   Pursuant to Article 3, Section 31 of the Mississippi Constitution, "The right of trial by jury shall remain inviolate . . . ."  Miss. Const. art. 3, § 31.  Mrs. Germany's complaint contains claims for relief that belong in circuit court, including those for breach of contract and the tort claims of intentional and negligent infliction of emotional distress.  *Southern Leisure Homes, Inc. v. Hardin*, 742 So. 2d 1088, 1090 (¶ 6) (Miss. 1999) (breach of contract claim is "best heard in circuit court"); *McLean v. Green*, 352 So. 2d 1312, 1314 (Miss. 1977)

18

("courts of equity should not assume jurisdiction over claims for personal injury"). Because of the constitutional right to a jury trial, chancery courts should not be given jurisdiction over tort claims. *McLean*, 352 So. 2d at 1314.

¶38. The instant case is not one such as *Issaquena Warren Counties Land Co., LLC v. Warren County*, 996 So. 2d 747 (Miss. 2008), where we justified chancery court jurisdiction – and the coinciding denial of a jury trial to a party that wanted one – because damages would be based on an ordinance, thereby obviating the need for a jury. *Id.* at 751 (¶ 11). If tried, Mrs. Germany's claims for breach of contract and infliction of emotional distress will require a trier of fact to weigh evidence, make credibility determinations, and assess damages, if any. The Constitution is clear that Mrs. Germany has the right to have a jury make those determinations, and the right to a jury trial is infringed, *i.e.*, violated, when cases that otherwise would be decided by a jury are heard in chancery court. *Southern Leisure*, 742 So. 2d at 1090 (¶ 7). Even if there is some doubt as to the nature of Mrs. Germany's claims, they belong in circuit court. As we often have written, "[I]t is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction." *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1182 (¶ 24) (Miss. 2004); *Southern Leisure*, 742 So. 2d at 1090 (¶ 6); *McDonald's Corp. v. Robinson Indus., Inc.*, 592 So. 2d 927, 934 (Miss. 1991).

¶39. I remain unpersuaded by the majority's reliance upon Article 6, Section 159 of the Mississippi Constitution, which places "full jurisdiction" of divorce proceedings and equitable matters in chancery court. After all – as the majority acknowledges – full

19

jurisdiction does not equal exclusive jurisdiction. As noted above, circuit courts certainly may hear equitable claims. Also, neither Section 159 nor the statute upon which the majority relies, Mississippi Code Section 93-5-7, applies to Mrs. Germany's complaint as her complaint was not one for divorce. Judicial economy is indeed served by having Mrs. Germany's claims adjudicated in the same forum as Mr. Germany's, and it is a noble goal. However, if the bill comes due and shows the price to be Mrs. Germany's constitutional right to a jury trial, I believe we must decline the bargain.

¶40. When considering a facial attack alleging lack of jurisdiction, we must consider all allegations in the plaintiff's case to be true. *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 822 (¶ 15) (Miss. 2009). Unfortunately, the majority appears to go through great pains to explain why Mrs. Germany's allegations are untrue. To use her breach of contract claim as an example, Mrs. Germany alleges that she married Mr. Germany after the couple already had enjoyed a close, confidential relationship for eight years. Although the majority writes that the Germanys entered into the alleged contract during marriage (Maj. at ¶ 12), the complaint reads as follows:

> Defendant Germany became precisely familiar with the nature and extent of [Mrs. Germany's father's] estate and Ginger's entitlements as an heir at law. Robert G. Germany acted as Ginger's attorney during the conservatorship proceedings. Dr. Murphree's estate was liquidated and dispersed to Ginger and her two sisters. Ginger Murphree Germany received substantial wealth upon the disbursement of the estate and entrusted the management of said money to Defendant Germany with the agreement and trust that Defendant Germany would assist the Plaintiff in financial investment matters and particularly the purchase of real estate. *This course of conduct was carried out for several years prior to the marriage of Plaintiff and Defendant Germany* and continued subsequent to the marriage. . . .

20

(Emphasis added.) If Mrs. Germany's claim for breach of contract is not a viable claim for breach of contract, our rules of procedure contain vehicles, *e.g.*, Rules of Civil Procedure 12(b)(6) and 56, for their dismissal. However, as shown above, if it *is* a claim for breach of contract she has a constitutional right to a jury trial. Based on the allegations of her complaint, which we are bound to accept as true, I believe she has stated viable claims as to which she has a constitutional right to a jury trial.

¶41. Just as the public policy favoring a plaintiff's right to choose the forum does not outweigh the constitutional right to a jury trial, *Crosby*, 870 So. 2d at 1182 (¶ 22), I do not believe the policy consideration of judicial economy outweighs Mrs. Germany's right to a jury trial. In my opinion, the circuit court has sole jurisdiction over Mrs. Germany's breach of contract and tort claims and shares concurrent jurisdiction over her claims for equitable relief. Because the circuit court first obtained jurisdiction, it "retains jurisdiction over the whole controversy to the exclusion or abatement" of Mr. Germany's lawsuit. *Scruggs, Millette, Bozeman & Dent, P.A. v Merkel & Cocke, P.A.*, 804 So. 2d 1000, 1006 (¶ 15) (Miss. 2001). Accordingly, I dissent.

**DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.**