# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01068-SCT

*MISSISSIPPI APARTMENT ASSOCIATION, METRO MS RENTALS, LLC, KLT PROPERTIES, LLC, KKR PROPERTIES, LLC, GBS HOMES, LLC, HOPE HOUSING, LLC, REZ PROPERTIES, LLC, REZ PROPERTIES 2, LLC, REZ PROPERTIES 3, LLC, REZ PROPERTIES AT NORTHTOWN PLACE, LLC, CJ ROSE PROPERTIES, LLC, LEE BERNARD, T&L PROPERTIES, LLC, EQUITY GROUP, LLC AND IRONWOOD PROPERTIES, LLC*

*v.*

*CITY OF JACKSON, MISSISSIPPI AND CHLOE DOTSON, DIRECTOR OF DEPARTMENT OF PLANNING AND DEVELOPMENT, IN HER OFFICIAL CAPACITY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2023 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | LEWIS W. BELL |
| | ROBERT B. IRELAND, III |
| | GABRIELLE CELESTE WELLS |
| | E. CLAIRE BARKER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT B. IRELAND, III |
| | LEWIS W. BELL |
| | GABRIELLE CELESTE WELLS |
| ATTORNEYS FOR APPELLEES: | LEE DAVIS THAMES, JR. |
| | DREW McLEMORE MARTIN |
| | E. CLAIRE BARKER |
| | JASON LEE NABORS |
| | SAMUEL L. BEGLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 4/17/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     At issue is whether Mississippi Code Section 11-51-75 provides the exclusive remedy for a party appealing the implementation of a decision by a city council. The Jackson City Council adopted an ordinance imposing registration and inspection requirements on rental housing units located within the city. The Mississippi Apartment Association and other owners and mangers of rental units in Jackson (collectively, MAA) appealed in the circuit court the city council's decision to adopt the ordinance but did not request a stay of the implementation of the ordinance during the pendency of the appeal. MAA later filed a separate action in the chancery court seeking injunctions based on the interpretation and enforcement of the ordinance. Because the circuit court had exclusive jurisdiction over the action challenging the city council's decision to adopt the ordinance, it also had pendent jurisdiction over MAA's equitable claims regarding interpretation and enforcement of the ordinance. Accordingly, we affirm the chancery court's decision to grant Jackson's motion to dismiss.

## FACTS AND PROCEDURAL HISTORY

¶2.     MAA is an industry organization whose members own, operate, and service more than 32,000 individual apartments in Mississippi. MAA states that it has seventy-two members operating more than nine thousand apartments in Jackson at present. The remaining plaintiffs either rent or manage, collectively, approximately two hundred rental homes and duplexes in Jackson.

¶3.    On December 20, 2022, the Jackson City Council adopted Ordinance of the City Council of Jackson, Mississippi Modifying Chapter 26: Article XII Additional Requirements for Rental Housing. The ordinance states that "[a]s of the year 2022, there are more rental units than homeowner occupied units in Jackson and the city finds it necessary to enforce a registration and inspection program to prevent future neglect of properties in the city . . . ." It established a rental registration program and named as being responsible for the administration and enforcement of the program the Jackson Department of Planning and Development.

¶4.    The ordinance provided a schedule for registering rental units and required owners or their authorized agents to register all rental housing units by August 30, 2023. The rental registration fee, which includes the first inspection, is $50 per unit. If a reinspection is required, an owner is charged an additional fee of $100 per unit. After the registration deadline, owners are not authorized to permit occupancy of a rental housing unit without first registering the rental unit. The ordinance provides, however, that "[a]n owner is authorized to permit occupancy of a rental housing unit that is timely registered until the Department makes a final decision on whether to issue a Certificate of Compliance."

¶5.    Within sixty days of registration, the planning department is required to notify the owner(s) of an inspection date and time. The ordinance provides the following:

Inspection of rental housing units shall be conducted as follows:

(1)    1-4 units – 100% of units inspected;

(2)    5-29 units – at least 20% of units inspected;

3

(3)     30-49 units – at least 15% of units inspected;

(4)     50 or more units – at least 10% of units inspected.

¶6.     If a rental housing unit fails the initial inspection, the Department is required to notify the owner in writing of the deficiencies within ten business days, and the owner has forty-five business days to schedule a second inspection. If an inspection is not scheduled within that time frame, the ordinance requires the rental housing unit to be listed as being out of compliance until a satisfactory inspection is received.

¶7.     Upon successful application submission, inspection, and fee payment, the planning department issues a certificate of compliance. The ordinance provides that a certificate of compliance expires one year from the date of issuance. Owners are required to renew a certificate of compliance at least thirty days before the certificate expires and pay the annual renewal fee of $50 each year. Failure to register a rental unit by the appropriate deadline results in a $500 fee per unit. The ordinance also imposes a $150 fee for unauthorized occupancy without a certificate of compliance.

¶8.     The ordinance defines a "Local Agent" as "[a] real person who resides in the city limits of Jackson, Mississippi who is able to respond reasonably to contact made by the Director of Planning or designee on a 24-hour basis. The local agent must be able to legally represent the owner." The ordinance provides no further information on whether owners are required to designate a local agent, however.

¶9.    On December 29, 2022, MAA filed in the Hinds County Circuit Court an appeal of the city council's decision pursuant to Mississippi Code Section 11-51-75. Miss. Code Ann. § 11-51-75 (Rev. 2019). Section 11-51-75 provides, in relevant part,

> Any person aggrieved by a judgment of decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court of the county in which the board of supervisors is the governing body or in which the municipality is located. A written notice of appeal to the circuit court must be filed with the circuit clerk within ten (10) days from the date at which session of the board of supervisors or the governing authority of the municipality rendered the judgment or decision.

*Id.* MAA did not request a stay of the enforcement of the ordinance pending an appeal under Mississippi Rule of Civil Procedure 62.

¶10.    On May 23, 2023, MAA filed in the Hinds County Chancery Court a complaint for declaratory and injunctive relief against Jackson and the director of Jackson's planning department, Chloe Dotson. MAA sought to have the chancery court (1) enter orders preliminarily and permanently declaring the planning department's registration requirements and other enforcement activities to be unenforceable; (2) enter orders preliminarily and permanently enjoining Jackson from utilizing registration requirements or engaging in other unenforceable enforcement activities; and (3) enter orders instructing Jackson to disgorge and repay rental housing owners all unlawful fees that have been collected pursuant to the ordinance. MAA distinguished its complaint for declaratory and injunctive relief from its complaint filed in the circuit court, arguing that the circuit court action was a facial challenge to the ordinance, while its chancery court action challenged the planning department's interpretation and enforcement of the ordinance.

5

¶11. MAA asserted that the ordinance contained no registration requirements apart from the timely payment of fees and, therefore, failed to provide owners fair notice of what is required to register and failed to provide the planning department with clear, enforceable standards. MAA argued that, as a result, the planning department implemented a confusing and mandatory online registration process that requires owners to provide more information than needed to administer the new inspection program. MAA stated that the registration requirements violate the owners' constitutional rights and other legal protections. MAA challenged the planning department's authority to create program requirements without the city council having adopted any registration standards and guidelines to govern the process.

¶12. MAA then challenged the planning department's interpretation and enforcement of the provisions of the rental ordinance and asserted, verbatim:

1. The Planning Department will not accept an owner's registration without owner designation of a Jackson resident to legally represent the owner on a 24 hour/7 days a week basis in response to contact from Planning Department officials. Not only is there no such "local agent" requirement in the Rental Ordinance, but "residency requirements" like this that unduly burden out-of-state owners and discriminate against interstate commerce plainly violate the dormant commerce clause.

2. The Planning Department will not accept an owner's registration without the owner paying unlawful $50 per unit regulatory fees that bear no relationship to the administrative costs incurred by the City to implement the new program affecting the vast majority of Jackson's 31,000 rental units, let alone to the costs incurred to register and inspect a single owner's units.

3. The Planning Department is forcing thousands more rental unit inspections than required based on a misinterpretation of the Rental Ordinance. Inspections are determined by the number of units in an owner's portfolio, not by the size of the property. Stated differently, an owner of 90 single family homes should not, as the Planning

6

Department is requiring, have to submit all houses to inspection when the owner of a 90 unit apartment complex need only have 18 units (or 20%) inspected.

4.      The Planning Department will not accept an owner's registration without the individual submitting the application (like an apartment complex employee) accepting individual liability for the rental property's compliance with the Rental Ordinance, let alone the underlying International Property Maintenance Code. The Rental Ordinance imposes no such personal liability.

5.      The Planning Department may not deny property managers the Rental Ordinance based right to register their managed units and have a percentage of them inspected based on the number of units in their entire management portfolio.

6.      The Planning Department may not deny Rental Ordinance exemptions to some, but not all, properties subject to established governmental programs requiring routine property inspections to ensure program eligibility based on their good condition.

¶13.    On June 21, 2023, Jackson filed in the chancery court a motion to dismiss for lack of jurisdiction. Jackson argued that because the sole remedy to appeal a municipality's ruling is through a notice of appeal filed with the circuit court, the chancery lacked subject matter jurisdiction.

¶14.    After conducting an evidentiary hearing, the chancery court granted Jackson's motion to dismiss for lack of jurisdiction and found that the circuit court had exclusive jurisdiction under Section 11-51-75. The chancery court stated: "This Court is sympathetic to [MAA's] assertions that the arguably unconstitutional and improper implementation and effectuation of the Rental Ordinance occurred after its passage and the resulting appeal. However, this Court cannot find the same to constitute a separate legal action permissible under these circumstances."

7

¶15. MAA raises a single issue on appeal: Whether the chancery court had subject matter jurisdiction to address MAA's claims that the planning department's interpretation and enforcement of the ordinance was unlawful.

**ANALYSIS**

¶16. The standard of review for a chancery court's grant of a motion to dismiss "for lack of subject matter jurisdiction is . . . de novo." ***Cath. Diocese of Jackson v. De Lange***, 341 So. 3d 887, 891 (Miss. 2022) (internal quotation marks omitted) (quoting ***Schmidt v. Cath. Diocese of Biloxi***, 18 So. 3d 814, 821 (Miss. 2009)). "Subject matter jurisdiction involves a court's power to hear a particular type of claim." ***Bd. of Supervisors for Lowndes Cnty. v. Lowndes Cnty. Sch. Dist. ex rel. Lowndes Cnty. Sch. Bd.***, 367 So. 3d 167, 173 (Miss. 2023) (citing ***Ridgeway v. Hooker***, 240 So. 3d 1202, 1208 (Miss. 2018)). It is a "threshold inquiry that must be determined before a court may proceed to the merits." ***Miss. Dep't of Corr. v. McClure***, 386 So. 3d 372, 377 (Miss. 2024) (internal quotation mark omitted) (quoting ***Melton v. Union Hill Missionary Baptist Church***, 377 So. 3d 974, 978 (Miss. 2024)).

¶17. As previously stated, Section 11-51-75 provides, in relevant part, that

> Any person aggrieved by a judgment of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court of the county in which the board of supervisors is the governing body or in which the municipality is located. A written notice of appeal to the circuit court must be filed with the circuit clerk within ten (10) days from the date at which session of the board of supervisors or the governing authority of the municipality rendered the judgment or decision.

Miss. Code Ann. § 11-51-75. This Court previously has determined that "[w]here a plaintiff's action is 'in form and substance, and for all purposes, an appeal from a decision' of a

municipality, 'exclusive jurisdiction [is] in the circuit court pursuant to § 11-51-75.'" *Falco Lime, Inc. v. Mayor & Aldermen of Vicksburg*, 836 So. 2d 711, 716 (Miss. 2002) (second alteration in original) (quoting *S. Cent. Turf, Inc. v. City of Jackson*, 526 So. 2d 558, 561 (Miss. 1988)).

¶18.    MAA argues that when the exclusive appeal remedy applies, a party is prevented from seeking in a second suit to enjoin the same municipal decision that has been appealed. It argues that Section 11-51-75 cannot serve as a bar to claims challenging the enforcement of the decision of the governing authority. Consequently, MAA maintains that the pending circuit court appeal pursuant to Section 11-51-75 does not prohibit MAA from seeking to enjoin the planning department's enforcement activities that are unlawful for reasons independent of the validity of the ordinance.

¶19.    Although we agree with MAA that the chancery court action is not simply duplicative of the circuit court action, the circuit court nevertheless is the proper court to decide MAA's claims. The *Falco Lime* Court discussed the possibility of a "hybrid" case in which an appeal under Section 11-51-75 and a separate action "arise out of a common nucleus of operative facts." *Falco Lime*, 836 So. 2d at 719 (internal quotation mark omitted) (quoting *Canton Farm Equip., Inc. v. Richardson*, 501 So. 2d 1098, 1109-10 (Miss. 1987)). It stated:

> Where the circuit court finds before it a § 11-51-75 appeal that "arises out of a common nucleus of operative fact" with claims that would ordinarily be resolved by a trial de novo, the better procedure is to function first in its appellate capacity and hear the § 11-51-75 appeal based on the bill of exceptions, and then proceed to the other claims (and the evidence related to

9

them) only if the resolution of the appeal leaves them unresolved.[1] In this manner, the requirements of the statute are met, and the circuit court avoids being presented with extraneous material that might compromise its duty to reach its appellate judgment solely on the bill of exceptions before it.

*Id.* at 720.

¶20. Here, as Jackson argues, MAA's circuit court action and chancery court action arise out of a common nucleus of operative fact. The enforcement and implementation of the rental unit registration process flows directly from the adoption of the ordinance. Further, although MAA argues that a chancery court ruling on the lawfulness of the planning department's actions would have absolutely no effect on the resolution of the circuit court appeal, the circuit court's rulings regarding the rental ordinance will directly affect the registration process. For example, if the circuit court found the ordinance to be invalid, the online registration process would be rendered moot. Thus, allowing a separate action in the chancery court could lead to contradictory rulings and confusion.

¶21. As this Court has stated,

We (and every other court in the land) have long held that once a court acquired actual subject matter jurisdiction of an action, other claims (whether asserted by the one or more of the original parties or by new or intervening parties), ancillary or pendent to the original claim could also be litigated in that action even though the ancillary or pendent claim standing alone may have

---

[1]Although Justice Maxwell's dissent contemplates how MAA could obtain injunctive relief in the circuit court based on facts not in the record, as stated in *Falco Lime*, the circuit court may consider the limited record for the Section 11-51-75 appeal and, if the resolution of the appeal leaves them unresolved, may "then proceed to the other claims (and the evidence related to them)[.]" *Falco Lime*, 836 So. 2d at 720. "In other words, after a party completes the § 11-51-75 appellate process, he may then present additional evidence on other claims if they remain unresolved." *Heritage Hunter Knoll, LLC v. Lamar Cnty.*, 356 So. 3d 91, 99 (Miss. 2023) (quoting *MEC, Inc. v. Lowndes Cnty. Bd. of Supervisors*, 759 Fed. Appx. 331, 338 (5th Cir. 2019)).

10

been beyond the court's jurisdiction. To fall within pendent or ancillary jurisdiction, the intruding claim must arise out of the same transaction or occurrence as the principal claim or, as others put it, out of a common nucleus of operative fact. The principal context in which we have recognized these notions is that where "legal claims" have been asserted in chancery court, pendent to the principal equity claim. *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 464 (Miss. 1983); *Burnett v. Bass*, 152 Miss. 517, 521, 120 So. 456 (1929). There is no reason or principle why the converse should not also be true: where a circuit court has jurisdiction of an action at law, it may hear and adjudicate in that action all claims, including those with an equitable smell, arising out of the same transaction and occurrence as the principal claim. *Compare Shaw v. Owen Gin Co.*, 229 Miss. 126, 133, 90 So.2d 179, 181 (1956); *see also, Tideway Oil Programs v. Serio*, *supra*, at 463–64 fn. 3 and accompanying text. Indeed, the converse would appear even more appropriate in that our circuit courts are courts of general jurisdiction, Miss. Const. art. 6 § 156 (1890), while our chancery courts are regarded as courts of special or limited jurisdiction. *Barnes v. McLeod*, 165 Miss. 437, 140 So. 740, 741 (1932).

*Hall v. Corbin*, 478 So. 2d 253, 255 (Miss. 1985).

¶22.     This Court later reiterated that principle, stating:

Generally speaking, circuit courts are courts of law and chancery courts are courts of equity. *See* Miss. Const. art. 6, § 159 (granting chancery courts jurisdiction over "all matters in equity"); Miss. Const. art. 6, § 156 (granting circuit courts "original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court"). However, chancery courts are courts of limited jurisdiction, while circuit courts are courts of general jurisdiction. *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 112 (Miss. 1998) (citing *Hall v. Corbin*, 478 So. 2d 253 (Miss. 1985)). Therefore, "if one issue is properly before the circuit court it has jurisdiction to decide all issues." *Id.* at 111. To determine whether a court has subject matter jurisdiction, we look to the face of the complaint, examining the nature of the controversy and the relief sought. *Durant v. Humphreys County Mem'l Hosp./Extended Care Facility*, 587 So. 2d 244, 250 (Miss. 1991); *Hood v. Dept. of Wildlife Conservation*, 571 So. 2d 263, 266 (Miss. 1990). If the complaint seeks legal relief, even in combination with equitable relief, the circuit court can have proper subject matter jurisdiction. *IP Timberlands Operating Co.*, 726 So. 2d at 111.

***RAS Fam. Partners, LP v. Onnam Biloxi, LLC***, 968 So. 2d 926, 928 (Miss. 2007); *see also*

***RiverHills Cap. Corp. v. At Home Care, Inc.***, 373 So. 3d 1009, 1013 (Miss. 2023)

("[C]ircuit courts with proper subject-matter jurisdiction over legal matters have pendent

jurisdiction over any attendant equitable claims." (citing ***Derr Plantation, Inc. v. Swarek***,

14 So. 3d 711, 716 (Miss. 2009))).

¶23. Because the circuit court has exclusive jurisdiction over the appeal of the city

council's decision to adopt the ordinance, the circuit court also has pendent jurisdiction over

the related claims regarding the enforcement of the ordinance. ***KD Hattiesburg 1128, Inc.***

***v. Turtle Creek Crossing, LLC***, 237 So. 3d 157, 163 (Miss. 2018) (citing ***Re/Max Est.***

***Partners, Inc. v. Lindsley***, 840 So. 2d 709, 713 (Miss. 2003)). Accordingly, to ensure judicial

efficiency, MAA's claims regarding the planning department's interpretation and

enforcement of the ordinance belong in the circuit court.

¶24. Moreover, MAA filed a suit for preliminary and permanent injunctive relief in the

chancery court. "Inadequacy of a remedy at law is the basis upon which the power of

injunction is exercised." ***A-1 Pallet Co. v. City of Jackson***, 40 So. 3d 563, 568 (Miss. 2010)

(citing ***Moore v. Sanders***, 558 So. 2d 1383, 1385 (Miss. 1990)). There, after the city

council's resolution to destroy buildings located on A-1's property, A-1 appealed the action

of the city council in the circuit court and also filed a petition for temporary restraining order

and permanent injunction against the city. ***Id.*** at 565. This Court reasoned that, "under

Section 11-51-75, the circuit court had exclusive jurisdiction to hear appeals of actions or

rulings of the Jackson City Council. Thus, A-1 had an adequate remedy at law, and injunctive

relief could not be granted." *Id.* at 569. It is clear that "[j]ust as with a preliminary injunction, for a permanent injunction to be granted, 'a party must show an imminent threat of irreparable harm for which there is no adequate remedy at law.'" *Id.* at 569 (quoting *Ruff v. Est. of Ruff*, 989 So. 2d 366, 369-70 (Miss. 2008)).

¶25.    Here, an adequate remedy at law existed in the circuit court. "Mississippi Code Section 11-51-75 provide[s] a right of appeal to a circuit court for any person aggrieved by a decision of municipal authorities or boards of supervisors—an adequate remedy at law . . . ." *Id.* (footnote omitted) (citing *Moore*, 558 So. 2d at 1385). Moreover, under Mississippi Rule of Civil Procedure 62(d), "[w]hen an appeal is taken, the appellant, when and as authorized by statute or otherwise, may obtain a stay subject to the exceptions contained in subdivision (a) of this rule." M.R.C.P. 62(d). The *Falco Lime* Court addressed injunctions in relation to an appeal of a municipality's decision, stating:

> Naturally, there will be cases in which it will be necessary to delay the implementation of a municipality's order pending the circuit court's ruling on the bill of exceptions. The correct way to provide such contingent relief is by a stay under Rule 62 of the Mississippi Rules of Civil Procedure. Because such a stay affords a "plain, adequate, speedy and complete remedy" for the plaintiffs' need for contingent relief, no preliminary injunction is appropriate.

*Falco Lime*, 836 So. 2d at 716-17. Therefore, MAA had the option to request a stay of the implementation of the ordinance under Rule 62. MAA argues that the circuit court could only enter a Rule 62 stay upon demonstration by the party challenging the rental ordinance that it was substantially likely to succeed in overturning that measure. Regardless, MAA's decision not to pursue a Rule 62 stay does not negate that an adequate remedy at law existed.

13

*See id.* at 717 n.3 ("Where a stay under Rule 62 serves the purpose, resort need not be had to the extraordinary remedy of injunctive relief.").

## CONCLUSION

¶26. Because the circuit court had exclusive jurisdiction over MAA's Section 11-51-75 appeal and because MAA's claims regarding the implementation of the ordinance arose from a common nucleus of operative fact, the chancery court properly dismissed MAA's claims.

¶27. **AFFIRMED.**

**RANDOLPH, C.J., CHAMBERLIN, ISHEE AND SULLIVAN, JJ., CONCUR. COLEMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRANNING, J.; MAXWELL AND GRIFFIS, JJ., JOIN IN PART. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J.; COLEMAN, P.J., AND BRANNING, J., JOIN IN PART.**

**COLEMAN, PRESIDING JUSTICE, DISSENTING:**

¶28. Pursuant to article 6, section 159, of the Mississippi Constitution, our chancery courts "shall have full jurisdiction" of "[a]ll matters in equity[.]" "[T]he chancery court's jurisdiction is set by the Mississippi Constitution, and cannot be diminished by statute." *White v. White*, 26 So. 3d 342, 347 (¶ 13) (Miss. 2010). Accordingly, if the chancery court has jurisdiction over the Association's Complaint for Declaratory and Injunctive Relief pursuant to section 159, and it does, then Mississippi Code Section 11-51-75 (Rev. 2019) cannot take it away.

¶29. To be certain, the Association's prayer for injunctive relief might fail on other grounds, be it the merits or otherwise. However, our State's constitution empowers the

14

chancery court to exercise subject matter jurisdiction over the Association's complaint and decide those questions. Because the chancery court has subject matter jurisdiction, I dissent.

> **I.     The issue before the Court is whether the chancery court has jurisdiction over the Association's complaint for injunctive relief.**

¶30.    The Association chose to file its complaint in chancery court. "[This Court has] described a plaintiff's ability to choose a forum as a 'right': 'Of right, the plaintiff selects among the permissible venues and his choice must be sustained unless in the end there is no credible evidence supporting the factual basis for the claim of venue.'" *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1064 (¶ 34) (Miss. 2012) (quoting *Bayer Corp. v. Reed*, 932 So. 2d 786, 790 (Miss. 2006) (quoting *Flight Line v. Tanksley*, 608 So. 2d 1149, 1155 (Miss. 1992))). The Association's choice is important not only because the majority refuses to sustain the Association's choice despite plenty of evidence supporting venue in its chosen forum but also because it frames the issue before us. We are not being asked if the circuit court *also* has jurisdiction over the prayers for injunctive relief although, as more fully set forth below, we have already explained that it does not—at least not as part of the Association's appeal. We are being asked whether the chancery court lacks the power to address the claims for relief, and, despite the constitutional grant of that power in section 159, the majority says no.

¶31.    The Association pled section 159 as its basis for subject matter jurisdiction in the chancery court. "It is true of course that, in a proper case, restraining orders and injunctions are within the jurisdiction of our chancery courts." *In re Bell*, 962 So. 2d 537, 541 (¶ 12) (Miss. 2007) (citing *S. Bus Lines, Inc. v. Amalgamated Ass'n of Street, Elec. Ry. & Motor*

15

*Coach Emps.*, 205 Miss. 354, 38 So. 2d 765, 768 (1949); *Miss. Theatres Corp. v. Hattiesburg Local Union No. 615*, 174 Miss. 439, 164 So. 887, 890 (1936)). Jurisdiction "means the power or authority of a court to hear and decide a case." *Penrod Drilling Co. v. Bounds*, 433 So. 2d 916, 922 (Miss. 1983) (citing *Jurisdiction*, Black's Law Dictionary (4th ed. 1968)).

> The source of the equity jurisdiction of the chancery court is the Constitution. Section 159. Among other matters, this section vests in the chancery court full jurisdiction of all matters in equity. *There is no limitation on the power of the chancery court in equity matters* except that the rights enforced or to be protected must come within the province and policy of remedial justice, and be a matter involving civil rights or property.

*Duvall v. Duvall*, 224 Miss. 546, 80 So. 2d 752, 755 (1955) (emphasis added) (citing V.A. Griffith, *Mississippi Chancery Practice* § 25).

¶32. The instant case is not about judicial economy and fairness; it is about jurisdiction. Pursuant to the precept cited above, the Association has a *right* to proceed in chancery court unless no credible evidence supports its decision. Importantly, the Association is not litigating the same grievance in both chancery and circuit court. As more fully set forth below, the matter in circuit court is a statutorily authorized appeal to the circuit court, over which the circuit court exercises appellate jurisdiction only. The matter filed by the Association in chancery court is a classic request for injunctive relief over which the Mississippi Constitution grants jurisdiction to the chancery court. It is true that if the Association prevails on its appeal in the circuit court, all or part of the chancery court matter might become moot. On the other hand, if the Association fails in circuit court, its chancery court issues remain viable.

## II. It is the circuit court, acting pursuant to a specific grant of appellate jurisdiction, that lacks the power to grant injunctive relief.

¶33. The City and the majority rely on *Falco Lime, Inc. v. Mayor & Aldermen of Vicksburg*, 836 So. 2d 711, 716 (¶ 18) (Miss. 2002), but, although the *Falco* Court intermittently used the term jurisdiction, that opinion in reality addressed the merits of the requested injunctive relief rather than the power of the court to entertain the request. There, the Court reasoned that Falco Lime had an adequate remedy at law pursuant to Section 11-51-75, so no court, circuit or chancery, would be able to grant injunctive relief as the absence of an adequate remedy at law is a prerequisite to injunctive relief. *Falco*, 836 So. 2d at 716 (¶ 18). The *Falco* Court reasoned that Falco could obtain the effect of an injunction by moving for a stay pursuant to the rules of civil procedure. *Id.* at 717-18 (¶ 20). Accordingly, the holding in *Falco* rested more on the merits of the request for injunctive relief than the power of the trial court to grant it. *Id.* at 716 (¶ 18).

¶34. Article 6, section 156, of the Constitution gives circuit courts "such appellate jurisdiction as prescribed by law[,]" and Section 11-51-75 is a grant of *appellate* jurisdiction to the circuit court. It should go without saying, but appellate courts, and by extension circuit courts acting under a grant of appellate jurisdiction, are different.

¶35. When *Falco* was decided, as now, Section 11-51-75 authorized circuit courts only to affirm or reverse the judgment.

> The power of the circuit court sitting as an appellate court under § 11-51-75 to grant a permanent injunction is foreclosed by the plain language of the statute. We have quoted that statute's grant of power to the circuit court to resolve appeals: the court "shall affirm or reverse the judgment. If the

17

judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities." We do not find that this language includes the power to grant a permanent injunction, as that is not a judgment that "the board or municipal authorities ought to have rendered."

*Falco*, 836 So. 2d at 717 (¶ 21). As the Association points out and the majority acknowledges, the Association's prayer for injunctive relief encompasses more than is at issue in its Section 11-51-75 appeal to the circuit court. Therefore, it cannot get the relief it requests via an injunction by filing a motion to stay there, and, therefore, Section 11-51-75 does not afford it an adequate remedy of law as was the case in *Falco*.

It will be noted that the language last above quoted to the effect that 'the matter shall be tried *de novo* by the circuit court' and also that the said court shall likewise have authority 'to approve or disapprove the action of the board' is wholly inconsistent. A trial *de novo*, within the common acceptation of that term, and as defined in the case of *Knox, Attorney General, v. L. N. Dantzler Lumber Co.*, 148 Miss. 834, 114 So. 873, and other decisions of this Court, means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken. *Whereas the mere authority to approve or disapprove the action of such tribunal means the right to affirm or reverse the case.* And if the decision appealed from is disapproved, and the cause is reversed and remanded, then the inferior tribunal is authorized to take such further proceedings as the facts shall warrant and as may not be inconsistent with the decision of the appellate court.

*Cal. Co. v. State Oil & Gas Bd.*, 200 Miss. 824, 27 So. 2d 542, 544 (1946).

¶36. Section 11-51-75 does not grant any authority to the circuit court other than the authority to reverse or affirm the decision under review, and the majority cites no legal authority to the contrary. In other words, it is solely a grant of appellate jurisdiction and not original jurisdiction. A court acting as an appellate court has no original jurisdiction and can

try only those questions that have been tried and decided by the lower tribunal. ***Leverett v. State***, 197 So. 2d 889, 890 (Miss. 1967); ***Glenn v. Herring***, 415 So. 2d 695, 697 (Miss. 1982) ("[A]ppellate jurisdiction necessarily implies that the subject matter must have been acted upon by the tribunal whose judgment or proceedings are to be reviewed.") That appellate jurisdiction enjoins the consideration of matters raised for the first time on appeal is so well-settled as to be axiomatic. ***Wells v. State***, 396 So. 3d 1084, 1086 (¶ 9) (Miss. 2024) (quoting ***Stratton v. McKey***, 384 So. 3d 499, 503 (¶ 13) (Miss. 2024)).

¶37.    Section 11-51-75 does not grant authority to the circuit court to grant the declaratory judgment for which the Association prays as, again, it only gives the circuit court the authority to affirm or reverse the contested action of the municipal board. ***Falco***, 836 So. 2d at 717 (¶ 21).    Here, the Association prays for a judgment declaring that the city's "registration requirements and other enforcement activities" are as a matter of law unenforceable because, *inter alia*, they are unconstitutional.

¶38.    The question of whether the conditions for granting injunctive relief, *i.e.*, the absence of an adequate remedy of law, is different from whether the chancery court has the power to consider the request.    "Subject matter jurisdiction is the power of the court to hear and determine cases in the general class to which the particular case belongs." ***Biddle v. Biddle (In re Est. of Biddle)***, 369 So. 3d 525, 529 (¶ 10) (Miss. 2023) (internal quotation marks omitted) (quoting ***Kelly v. Cuevas (In re Est. of Kelly)***, 951 So. 2d 543, 548 (¶ 15) (Miss. 2007)).    The power of the Court to grant relief is on its face a different consideration than whether such relief should be granted.    "Without jurisdiction the court cannot proceed at all

in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Miss. Dep't of Revenue v. AT&T Corp.*, 101 So. 3d 1139, 1149 (¶ 26) (Miss. 2012) (internal quotation marks omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1988)). The consideration of whether an adequate remedy at law exists cannot be reached until jurisdiction is established and, pursuant to *Falco*, the circuit court acting pursuant to Section 11-51-75 does not have that power.

¶39. Finally, as the *Falco* Court pointed out, a circuit court hearing the appeal of a municipal action pursuant to Section 11-51-75 is limited to the record as it existed before the municipal board in question. *Falco*, 836 So. 2d at 716 (¶ 17) (citing *Wilkinson Cnty. Bd. of Supervisors v. Quality Farms, Inc.*, 767 So. 2d 1007, 1011 (Miss. 2000); *Stewart v. City of Pascagoula*, 206 So. 2d 325, 328 (Miss. 1968), *superseded by rule as stated in Jones v. City of Canton*, 278 So. 3d 1129 (Miss. 2019)). As the Association's complaint encompasses issues in addition to those raised in its appeal to the circuit court, it stands to reason that, in order for them to be properly addressed, facts and evidence other than that produced to the municipality will be developed. The Association will not be able to do so as part of its appeal to the circuit court.

## CONCLUSION

¶40. A party has to pick. Here, the Association picked the chancery court—the court that pursuant to our Constitution and well-settled precedent has jurisdiction over matters in equity including prayers for injunctive relief—in which to file its, well, complaint for injunctive

20

relief. It made that choice instead of trying to join original claims for injunctive relief to its appellate matter in circuit court, and, in doing so, chose a forum consistent with clear language from *Falco* that forestalls the circuit court's power to grant the relief it sought.

¶41. Pursuant to the foregoing reasoning, the Court should reverse the judgment of the chancery court and remand the case for further proceedings. It might well be that the Association's prayers for declaratory judgment and injunctive relief fail on the merits because an adequate remedy at law exists or for other deficiencies, or they might have merit. What is not in question is that our Constitution gives Mississippi's chancery courts the power to make that determination, and Section 11-51-75 cannot diminish that power.

**BRANNING, J., JOINS THIS OPINION. MAXWELL AND GRIFFIS, JJ., JOIN THIS OPINION IN PART.**

**MAXWELL, JUSTICE, DISSENTING:**

¶42. We have been clear that if you are going to challenge a city's decision by filing a bill-of-exceptions type appeal in circuit court, the circuit court is also where you get your injunctive relief from that decision while the appeal is pending. *Falco Lime, Inc. v. Mayor & Aldermen of Vicksburg*, 836 So. 2d 711, 716-17 (Miss. 2002). This is not because Mississippi Code Section 11-51-75 (Rev. 2019) somehow deprives or removes the chancery court's constitutionally vested jurisdiction over all matters in equity, including injunctive relief. Miss. Const. art. 6, § 159; *Germany v. Germany*, 123 So. 3d 423, 434 (Miss. 2013) (citing *Derr Plantation, Inc. v. Swarek*, 14 So. 3d 711, 716 (Miss. 2009)). Instead, it is for the very practical reality that a party cannot challenge a city ordinance in circuit court and *at the same time* seek injunctive relief from the very same ordinance in a separate chancery

21

court action. As a matter of judicial economy and fairness, this Court does not allow parties to litigate the same grievance in multiple courts at the exact same time. ***Triplett v. S. Hens, Inc.***, 238 So. 3d 1128, 1131 (Miss. 2018).

¶43. But what complicates this particular matter is that the Mississippi Apartment Association's chancery action was not aimed at the city's decision to *adopt* the rental ordinance. Instead, the later-filed chancery matter was aimed at the city's actions taken *after* adoption of the ordinance—namely, the requirements the planning department later put in place to implement the ordinance.

¶44. At first blush, this may seem like a distinction without a difference. But it does matter that MAA's chancery action is based on the city's post-adoption method of implementing the rental ordinance—not its earlier adoption of the rental ordinance. And it matters because of the limited record and scope of the circuit-court appeal.

¶45. In the circuit-court appeal, the appellate record was limited to what was presented to the city during its decision process. *See* § 11-51-75. Section 11-51-75 directs that a party appealing a city's decision must designate the appellate record within ten days of filing the notice of appeal. Miss. Code Ann. § 11-51-75(b) (Rev. 2019). And the circuit court's appellate review is limited to what was designated as the record. Miss. Code Ann. § 11-51-75(d) (Rev. 2019). So anything that happened after adoption of the ordinance—like how the planning department has interpreted the ordinance and has set out to implement it—was not in the circuit court record. Further, the scope of the circuit court's appellate jurisdiction was solely limited to affirming or reversing the City's decision to adopt the ordinance. § 11-1-

75(d); *Lee v. City of Pascagoula*, 402 So. 3d 752 (Miss. 2025). Thus, the city's or its planning agency's subsequent actions are clearly outside the scope of the circuit court's appellate review.

¶46.   This prompts the question—how could MAA obtain injunctive relief in the circuit court appeal based on facts not in the record, that did not yet exist, based on actions outside the scope of the circuit court's appellate jurisdiction? I am certainly not a fan of multiple or piecemeal-type litigation. But here, I do not see what else MAA could have done but seek a stay in chancery court after it learned of the city's post-ordinance plan for inspecting rental units and assessing rental fees. Not only had the time to seek a stay in the circuit court matter passed, but that court would have also had to go outside the appellate record and consider city actions taken after the appeal had been filed.

¶47.   I appreciate that MAA *could* have asked the circuit court to immediately stay the rental ordinance from going into effect while its statutory appeal was pending. And this *could* have possibly avoided the necessity of MAA's chancery court action to stave off what it deems unreasonable implemental measures. But not only had the inspection and assessment measures not been implemented then, this now hindsight approach requires a hefty assumption—an assumption the circuit court would have granted a stay. And there was certainly no guarantee the circuit court would have stayed the entire ordinance from going into effect city-wide.

¶48.   Similarly, there is no guarantee that, had the chancery court kept the case, it would have granted the injunctive relief MAA requested. And even if a majority of this court voted

23

to remand this case, the chancellor still might not.  But speculation aside, I find it was wrong for the chancery court to decide instead that it lacked jurisdiction to grant the limited injunctive relief MAA sought.[2]

¶49.    Because the chancery court did have jurisdiction, I dissent.

**GRIFFIS, J., JOINS THIS OPINION. COLEMAN, P.J., AND BRANNING, J., JOIN THIS OPINION IN PART.**

---

[2]To be clear, I agree with the majority that under *Falco Lime*, had MAA filed a separate "ordinary complaint" based on the same underlying facts, the situation would differ. *Falco Lime*, 836 So. 2d at 717.  In that scenario, MAA would have to file their second action in the circuit court, and as the majority notes the second suit would have to wait until the Section 11-51-75 appeal was resolved. *Id.* at 720; *see also* **Heritage Hunter Knoll, LLC v. Lamar Cnty.**, 356 So. 3d 91, 99 (Miss. 2023).  But the complaint for injunctive relief was not based on the ordinance.  It was based on different facts—the city's actions *after* the ordinance.  So under these facts, this was not a *Falco Lime* situation.